IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| KEVIN YOUNGER, individually, | § | |
| and on behalf of all others similarly | § | |
| situated, | § | |
|     *Plaintiff*, | § | |
| | § | |
| v. | § | |
| | § | CIVIL ACTION NO. 3:17-cv-01287 |
| STRIKE TEAM, INC. d/b/a DALLAS | § | |
| SECURITY AND ALARM, NORTH | § | |
| TEXAS SECURITY & ALARM, INC., | § | |
| WALTER ROBERTS, ELIZABETH | § | |
| ROBERTS, HENRY CLEMONS, | § | |
| MICHAEL MCGREGOR, JOHN | § | |
| ROBERTS, AND PAMELA ROBERTS, | § | COLLECTIVE ACTION |
| | § | |
|     *Defendants*. | § | JURY DEMANDED |

## PLAINTIFF'S ORIGINAL COMPLAINT AND JURY DEMAND

**TO THE HONORABLE JUDGE OF SAID COURT:**

Comes Now Kevin Younger, on behalf of himself and all other similarly situated current and former nonexempt employees of Defendants, to recover unpaid overtime wages, unpaid minimum wages, and other statutorily authorized damages from Defendants Strike Team, Inc., doing business as Dallas Security and Alarm ("DSA"), North Texas Security & Alarm, Inc., Walter Roberts, Elizabeth Roberts, Henry Clemons, Michael McGregor, John Roberts and Pamela Roberts (collectively "Defendants").

### NATURE OF SUIT

1. Defendants employed Plaintiff and other security guards to work high-risk assignments at hourly rates of pay and then failed to pay these employees any compensation at all for assignments worked in the final weeks of employment. Defendants also failed to pay Plaintiff and other security

guards at overtime premium rates for overtime work performed during the course of their employment. Plaintiff brings collective action claims under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq.* and class action claims under the Texas Payday Act to recover (i) unpaid wages, unpaid overtime wages, and unpaid minimum wages from Defendant for time worked, (ii) liquidated damages pursuant to 29 U.S.C. § 216(b) and any other punitive damages available under the Texas Payday Act; and (iii) reasonable attorney fees and costs.

## JURISDICTION AND VENUE

2. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331 and 1337, 1343, and supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367. In addition, the Court has jurisdiction over Plaintiff's claims under the FLSA pursuant to 29 U.S.C. § 216(b).

3. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b)(1) and under 28 U.S.C. § 1391(b)(2) because the Defendants' principal place of business is located within the district; and all or substantial part of the events or omissions giving rise to the claim occurred in this district.

## PARTIES

4. Plaintiff, Kevin Younger, at all relevant times hereto, is a citizen and resident of Dallas, Dallas County, Texas. Defendants employed Plaintiff in the capacity as a security guard within the meaning of FLSA during the three (3) year period preceding the filing of this action.

5. Defendant Strike Team, Inc., doing business as Dallas Security and Alarm, is a corporation organized and existing under the laws of the State of Texas with its principal place of business in Dallas, Texas. Its primary business purpose is the operation of providing security services.

6. Defendant North Texas Security & Alarm, Inc., doing business as Southwest Security and Technology, is a corporation organized and existing under the laws of the State of Texas with its

principal place of business in Dallas, Texas. Its primary business purpose is the operation of providing security services.

7. Defendants Strike Team, Inc. and North Texas Security & Alarm, Inc. (hereinafter "DSA") are a joint enterprise, sharing common ownership and common management, and, on information and belief, sharing common bank accounts and funding sources, common payroll processors and payroll practices, common employee benefits, common contracts, and the common integral purpose of providing profit to the individual Defendants from the provision of security guard services to businesses in the DFW area.

8. Defendant Walter Roberts is an individual and an owner of DSA. Defendant Walter Roberts had the power to hire and fire DSA's employees, had the power to set the work schedules of, set the pay rates of, and determine how to compensate Plaintiff and other employees, and had ultimate control over the finances and operations of DSA. Thus, he may be considered an "employer" under the FLSA.

9. Defendant Elizabeth Roberts is an individual and an owner of DSA. Defendant Elizabeth Roberts had the power to hire and fire DSA's employees, had the power to set the work schedules of, set the pay rates of, and determine how to compensate Plaintiff and other employees, and had ultimate control over the finances and operations of DSA. Thus, she may be considered an "employer" under the FLSA.

10. Defendant Henry Clemons is an individual and a director and manager of DSA. Defendant Clemons directed Plaintiff's day-to-day activities, and had the power to hire and fire, set the work schedules of, set the pay rates of, and determine how to compensate Plaintiff and other employees. Thus, he may be considered an "employer" under the FLSA.

11. Defendant Michael McGregor is an individual and a director and manager of DSA.

Defendant McGregor directed Plaintiff's day-to-day activities, and had the power to hire and fire, set the work schedules of, set the pay rates of, and determine how to compensate Plaintiff and other employees. Thus, he may be considered an "employer" under the FLSA.

12. Defendant John Roberts is an individual and a director and manager of DSA. Defendant John Roberts directed Plaintiff's day-to-day activities, and had the power to hire and fire, set the work schedules of, set the pay rates of, and determine how to compensate Plaintiff and other employees. Thus, he may be considered an "employer" under the FLSA. directed Plaintiff's day-to-day activities. Thus, he may be considered an "employer" under the FLSA.

13. Defendant Pamela Roberts an individual and a director and manager of DSA. Defendant Pamela Roberts directed Plaintiff's day-to-day activities, and had the power to hire and fire, set the work schedules of, set the pay rates of, and determine how to compensate Plaintiff and other employees. Thus, she may be considered an "employer" under the FLSA.

14. Whenever in this Complaint it is alleged that Defendants committed any act or omission, it is meant that each of the named Defendants committed such act or omission and authorized, ratified, and approved of the act or omission if committed by Defendants' owners, officers, directors, agents, servants or employees.

**FACTS**

15. From February 2016 through October 2016, Defendants employed Plaintiff as a security guard at various locations in the Dallas-Fort Worth area.

16. At all relevant times, Defendants' gross annual revenue exceed $500,000 per year.

17. Defendants, at all relevant times, had employees engaged in commerce or in the production of goods for commerce, or employees handling, selling, or otherwise working on goods or

materials that have been moved in or produced for commerce by any person

18. Defendants' security guards were required to carry cellular phones, firearms, and other weapons, all of which were goods or materials moved in and produced for commerce.

19. Plaintiff, for example, carried a cellular phone, a taser, pepper spray, handcuffs, and a Glock 45 firearm that was manufactured in Australia and traveled through interstate commerce within the United States.

20. Plaintiff and Defendants' other security guards also regularly utilized interstate telecommunications networks in the course of their job duties, and sent their security reports via a cellular phone application to both Defendants and Defendants' clients.

21. Defendants set Plaintiff's pay rate as $11.25 per hour.

22. Defendants regularly assigned Plaintiff to work 50 to 60 hours per week during the course of his employment.

23. Defendants, however, never paid Plaintiff an overtime rate of $16.88 per hour for the 10 to 20 overtime hours Plaintiff worked each week.

24. Defendants failed to pay Plaintiff any compensation at all for the 52 hours Plaintiff worked from July 20, 2016 through July 24, 2016 and for the 53 hours Plaintiff worked from July 27, 2016 through July 31, 2016. In August 2016, Defendants told Plaintiff his services were no longer needed on the day Plaintiff was supposed to receive his paychecks, and then never gave him his final two paychecks. As a result, Plaintiff was not even compensated at the minimum wage for the work he performed during the last two pay periods of his employment, and did not receive his final two paychecks within six days of his lay off as required by the Texas Payday Law.

25. Defendants engaged in a pattern and practice of failing to pay overtime rates to their

security guard employees for overtime hours worked, and failing to pay their security guards any compensation at all for the final pay periods the guards worked prior to their layoffs or resignations.

26. For example, Defendants failed to pay its employee, security guard Joseph Vankirk Jr., any wages at all for the 42 hours Mr. Vankirk worked from August 29 through September 4, 2016, the 30 hours Mr. Vankirk worked from September 5 through 11, 2016, the 42 hours Mr. Vankirk worked from September 12 through September 18, 2016, and the 36 hours Mr. Vankirk worked from September 19 through September 26, 2016. Defendants had set Mr. Vankirk's hourly wage rate at $10 per hour but never paid Mr. Vankirk at a rate of $15 per hour for hours worked in excess of 40 per week.

27. For another example, Defendants failed to pay its employee, security guard Jamall Montray Spearrman, any wages at all for the 35 ½ hours Mr. Spearman worked from July 7 through July 10, 2016, the 56 ½ hours Mr. Spearman worked from July 11, 2016 through July 17, 2016, 49 hours Mr. Spearman worked from July 18 through July 24, 2016, the 40 hours Mr. Spearman worked from July 25 through July 30, 2016, the 40 hours Mr. Spearman worked from August 1 through August 7, 2016, the 56 hours Mr. Spearman worked from August 8 through August 14, 2016, and the 42 hours Mr. Spearman worked from August 15 through 18, 2016. Defendants had set Mr. Spearman's hourly rate at $11.00 per hour but never paid Mr. Spearman at a rate of $16.50 per hour for hours worked in excess of 40 hours per week.

28. Plaintiff's work and the work of other similarly-situated security guards was performed in the normal course of the Defendants' business and was integral part of Defendants' business.

29. Defendants willfully failed to pay an overtime rate to, and willfully withheld paychecks from, their security guard employees as a means to keep their security guard business operating at a low margin of cost, to increase their own profit margin from the payments they received from their customers to provide security guard services, and to avoid having to invest their own money into the

business to keep the business operating. In short, Defendants kept their security guard business running by exploiting the very employees whose services generated their revenue.

30. No exemption excuses the Defendants for failing to pay Plaintiff and other security guards for the work they performed.

## COLLECTIVE ACTION ALLEGATIONS

31. Plaintiff re-alleges and incorporates by reference all of the facts set forth in the above sections of this Complaint.

32. Pursuant to 29 U.S.C. §207, Plaintiff seeks to prosecute his/her FLSA claim as a collective action on behalf of all persons who are or were formerly employed by the Defendants as security guards or who had similar responsibilities in the United States, and any time since May 12, 2014 to the entry of judgment in this case (the "Collective Action Period) and who were not compensated for the hours they worked as required by law (the "Collective Action Members").

33. The collective action class is so numerous that joinder of all members is impracticable and disposition of their claims in a class action will provide substantial benefits both to the parties and the Court.

34. Although the precise number of security guards impacted by Defendants unlawful pay practices is currently unknown, and information solely within the control of the Defendants, five security guards formerly employed by Defendants have already consented to join this collective and class action as party plaintiffs, as reflected in Exhibit A to this Complaint. Plaintiff alleges that there are at least

35. Plaintiff alleges there are at least 8 security guards in addition to the 5 who have already joined this action as party plaintiffs who were members of the class during the Collective Action Period, and that Plaintiff and each of these other security guards would not be likely to file individual

suits, because the amount of individual damages suffered by individual Collective Action Members is modest relative to the expenses and burdens of individual litigation.

36. Plaintiff will fairly and adequately protect the interest of the Collective Action Members and has retained competent counsel. Plaintiff has no interest that is contrary to or in conflict with those members of this collective action.

37. A collective action is superior to other available methods for the fair and efficient adjudication of this controversy.

38. There is a well-defined community of interest in the questions of law and fact involved affecting the parties to be represented, because the Defendants acted on grounds generally applicable to all member. The questions of law and fact common to each of the Plaintiffs include:

   a. Whether the Defendants employed the Collective Action Members within the meaning of the FLSA;

   b. Whether the Defendants failed to maintain accurate time and pay records for Plaintiff and other similarly situated persons as required by 29 U.S.C. §211(c);

   c. Whether the Defendants failed to compensate the members of the class at an overtime rate for overtime hours worked as required by the Fair Labor Standards Act, 29 U.S.C. §201, et seq., and its implementing regulations, 29 C.F.R. § 785.47 and 29 C.F.R. § 785.48;

   d. Whether the Defendants failed to compensate the members of the class at all for some of the hours they worked and thus failed to pay members of the class that work at the Federal minimum wage rate as required by the Fair Labor Standards Act, 29 U.S.C. §201, et seq., and its implementing regulations, 29 C.F.R. § 785.47 and 29 C.F.R. §

785.48;

e. Whether Defendants' violations of the FLSA are willful as that term is used within the context of the FLSA;

f. Whether the Defendants are liable for all damages claimed hereunder, including but not limited to compensatory damages, liquidated damages, interest, costs, and reasonable attorney's fees; and

g. Whether the Defendants should be enjoined from such violations of the FLSA in the future.

39. Plaintiff is not aware of any difficulty that will be encountered in the management of this litigation that would preclude its maintenance as a collective action.

## CLASS ALLEGATIONS UNDER TEXAS PAYDAY ACT

40. Plaintiff re-alleges and incorporates by reference all of the facts set forth in the above sections of this Complaint.

41. Plaintiff sues on his behalf and on behalf of a class of persons under Rules 23(a) and (b)(3) of the Federal Rules of Civil Procedure.

42. As Plaintiff's employer, the Defendants were obligated under the Texas Payday Act to timely compensate him for services rendered. Tex. Lab. Code § 61.001, et seq. and §61.001(7). The Texas Payday Act specifically states, "An employer shall pay in full an employee who is discharged from employment not later than the sixth day after the date the employee is discharged." Tex. Lab. Code § 61.014. The Act further provides, "An employer shall pay in full an employee who leaves employment other than by discharge not later than the next regularly scheduled payday."

43. Defendants failed to pay its employees in full within six days of their discharge or, for

those who resigned, by the next regularly scheduled payday.

44. Plaintiff seeks to prosecute his Texas Payday Act claim as a class action on behalf of all persons who are or were formerly employed by Defendants as security guards or who had similar responsibilities in the United States and any time since May 12, 2013 to the entry of judgment in this case (the "Collective Action Period") and who were not compensated for the hours they worked as required by law (the "Collective Action Members").

45. The collective action class is so numerous that joinder of all members is impracticable and disposition of their claims in a class action will provide substantial benefits both to the parties and the Court. Although the precise number of such persons is unknown, and solely within the control of the Defendants, Plaintiff alleges there are at least 13 members of the class during the Class Action Period, most of whom would not be likely to file individual suits because they lack the adequate financial resources, access to attorneys or knowledge of their claims.

46. Plaintiff will fairly and adequately protect the interest of the Class Action Members and has retained competent counsel. Plaintiff has no interest that is contrary to or in conflict with those members of this collective action.

47. A class action is superior to other available methods for the fair and efficient adjudication of this controversy, since joinder of all members is impracticable. Furthermore, inasmuch as the damages suffered by individual Class Action Members may be relatively small, the expense and burden of individual litigation make it virtually impossible for the members of the collective action to individually seek redress for their damages.

48. There is a well-defined community of interest in the questions of law and fact involved affecting the parties to be represented. The questions of law and fact common to each of the Collective Action Members predominate over questions, which may affect only individual members because the

Defendant acted on grounds generally applicable to all members. Among the common questions of law and fact common to Plaintiff and other Collective Action Members are:

a. Whether the Defendants failed to adequately compensate the members of the class for all hours worked as required by the Texas Payday Act;

b. Whether the Defendants failed to compensate the members of the class for all hours worked within the time period prescribed after involuntarily termination, layoff, or voluntary resignation as required by the Texas Payday Act;

c. Whether Defendants' violations of the Texas Payday Act was willful;

d. Whether the Defendants are liable for all damages claimed hereunder, including but not limited to compensatory, punitive and statutory damages, interest, costs, and disbursements and attorneys' fees; and

49. Plaintiff is not aware of any difficulty that will be encountered in the management of this litigation that would preclude its maintenance as a class action.

## FIRST CLAIM FOR RELEF –
## FLSA OVERTIME AND MINIMUM WAGE VIOLATIONS

50. Plaintiff, on behalf of himself and all Collective Action Members, re-alleges and incorporates by references paragraphs 1 through 49 as if they were set forth again herein.

51. At all relevant times, the Defendants employed and/or continue to employ, Plaintiff and each of the Collective Action Members within the meaning of the FLSA.

52. Upon information and belief, at all relevant times, the Defendants have had annual gross revenues in excess of $500,000 and employed employees who handled goods and materials moved through interstate commerce. Plaintiffs were also individually covered by the FLSA based on their

regular use of interstate telecommunications networks to make their security reports.

53. Plaintiff consents in writing to be a party to this action, pursuant to 29 U.S.C. §216(b).

54. Defendant failed to pay Plaintiff and its other security guards at one and a half times their hourly rate of pay for hours worked in excess of forty hours per week, and thus violated the FLSA's overtime provisions.

55. Defendants also failed to pay Plaintiff and other members of the class at all for hundreds of hours work they performed and thus violated the FLSA's minimum wage provisions by failing to pay Plaintiff and the class members at least the Federal minimum wage for all hours worked.

56. As a result of the Defendants' willful failure to compensate its employees, including Plaintiff and the Collective Action Members, at an overtime rate for overtime hours and at all for other hours Plaintiffs worked, the Defendants have violated and continue to violate the FLSA, 29 U.S.C §201 et seq., including 29 U.S.C. §207(a)(1) and 215(a).

57. The foregoing conduct, as alleged, constitutes a willful violation of the FLSA within the meaning of 29 U.S.C. §255(a). One of Defendants' managers admitted in a text message to Mr. Jamall Montray Spearman, one of the Collective Action Members, that Defendants were well aware of their failure to pay Mr. Spearman wages he had earned, and texted back "I total agree with u…" when Mr. Spearman texted "…I need all my money. I never seen a company that can't pay that employees that's not righteous…"

58. Due to the Defendants' willful FLSA violations, Plaintiff, on behalf of himself and the Collective Action Members, are entitled to recover from the Defendants their unpaid wages, an additional amount equal to their unpaid wages as liquidated damages, reasonable attorneys' fees, and costs for this action, pursuant to 29 U.S.C. §216(b).

## SECOND CLAIM FOR RELEF –
## TEXAS PAYDAY ACT VIOLATIONS

59. Plaintiff, on behalf of himself and all Collective Action Members, re-alleges and incorporates by references paragraphs 1 through 58 as if they were set forth again herein.

60. Defendants, as Plaintiff's employer, were obligated under the Texas Payday Act to pay Plaintiff for all hours worked, to pay Plaintiff and those class members who were laid off or discharged within six days of their discharge, and to pay those class members who quit by the next regularly scheduled payday after their resignations. Tex Labor Code §61, et seq.

61. At all relevant times, Defendants had a policy and practice of failing to pay its security guards for all of their hours worked and withholding final paychecks such that Plaintiff, whose employment ended in August of 2016, and the class members still have not received any payment for work they performed in the final weeks of their employment.

62. As a result of the Defendant's willful failure to compensate its employees, including Plaintiff and the Collective Action Members, for all hours and/or portions of hours worked, the Defendant has violated and continues to violate The Texas Payday Act.

## DEMAND FOR TRIAL BY JURY

63. Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiffs demand a trial by jury on all questions of fact raised by this Complaint.

## PRAYER FOR RELIEF

Wherefore, Plaintiff on behalf of himself and all other similarly situated Collective Action Members and members of the Class, respectfully requests that this Court grant the following relief:

1. Certification of this action as a collective action on behalf of the Collective Action Members and prompt issuance of notice pursuant to 29 U.S.C. §216(b) to all similarly situated

employees of Defendants who were employed during the three (3) years immediately preceding the filing of this lawsuit, apprising them of the pendency of this action, permitting them to assert timely FLSA claims in this action by filing individual Consents to Sue pursuant to 29 U.S.C. §216(b) and appointing Plaintiff and his counsel to represent the Collective Action members;

2. Certification of this action as a class action pursuant to Fed. R. Civ. P. 23 (b)(2) and (3) on behalf of the members of the Class and appointing Plaintiff and him counsel to represent the Class;

3. Award Plaintiff and the class members all unpaid wages, including unpaid overtime wages and unpaid minimum wages, due under the FLSA and Texas Payday Act;

4. Award Plaintiff and the class members liquidated damages as a result of the Defendants' willful failure to pay Plaintiff and others similarly situated for hours worked pursuant to 29 U.S.C. §216(b);

5. Award Plaintiff punitive damages as a result of the Defendants' willful failure to pay Plaintiff and others similarly situated for hours worked pursuant to the Texas Payday Law;

6. An award of prejudgment and post-judgment interest;

7. An award of court costs and expenses of this action together with reasonable and necessary attorneys' fees and expert fees for both this cause and for any and all appeals; and

8. Such other and further relief as this Court deems just and proper.

DATED: May 12, 2017     Respectfully submitted,

TREMAIN ARTAZA PLLC

*/s/ Christine A. Hopkins*
Christine A. Hopkins
Texas State Bar No. 24095768

4925 Greenville Avenue, #200
Dallas, TX 75206
christine@tremainartaza.com
Telephone: 469-573-0297
Facsimile: 214-254-4941

**ATTORNEY FOR PLAINTIFFS**